## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| | § | |
| **NATHAN R. BARKER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:05-CV-0156-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>REPORT AND RECOMMENDATION</u>

**THIS MATTER** is before the court upon Plaintiff's complaint filed August 23, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on June 20, 2006, and Defendant filed her brief on July 19, 2006. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge reverse the Commissioner's decision and remand this matter for further proceedings.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on June 10, 2002, with a protective filing date of June 5, 2002, for his SSI application, alleging disability beginning December 14, 1998.  Tr. 13.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 413-21, 469-71, 475-79.  Plaintiff timely filed a Request for Hearing by Administrative Law Judge, and this matter came for hearing before the Administrative Law Judge ("ALJ") on October 6, 2003.  Tr. 13, 487-515.  Plaintiff, represented by an attorney, testified in his own behalf.  Tr. 492-514.  Michael Driscoll, a vocational expert ("VE"), appeared but did not testify.  Tr. 13.  At the hearing, Plaintiff requested that his alleged onset date be amended to July 11, 1996.  *Id.*  The ALJ issued a decision unfavorable to Plaintiff on December 16, 2003.  Tr. 11-25.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff met the disability insured status requirements on July 11, 1996, but only through June 30, 2002.  In order to be entitled to disability insurance benefits, Plaintiff's disability must be shown to have begun as of or prior to June 30, 2002.  Plaintiff had not engaged in substantial gainful activity at any time since July 11, 1996.  Tr. 14.  Plaintiff has "severe" impairments, including chronic low back pain, a history of degenerative disc disease, disc bulges, and herniated discs of lumber spine, impairment status-post two lumbar laminectomies and a fusion, major depression without psychotic features, alcohol dependence, and personality disorder not otherwise specified.  *Id.*  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id.*

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 17.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 17, 24. The ALJ found that Plaintiff could not return to his past relevant work as a compressor mechanic and an oilfield roughneck. Tr. 23-24.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the requirements of light work activity, limited to jobs that do not require more than occasional positional changes and are unskilled. He found that Plaintiff's limitations do not significantly affect his ability to perform work existing in significant numbers in the national economy. Therefore, the ALJ found that Plaintiff was not disabled. Tr. 24-25.

Plaintiff submitted a Request for Review of Hearing Decision/Order on January 5, 2004. Tr. 10A. After granting a 25-day extension, the Appeals Council issued its opinion on August 26, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 9-10. The ALJ's decision, therefore, became the final decision of the Commissioner.

On August 23, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir.

2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

 In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy.  Tr. 24-25.

## III.   DISCUSSION

Plaintiff claims that the ALJ failed to properly evaluate the medical evidence in making his RFC determination by failing to appropriately weigh the opinions of his treating physicians and by failing to give appropriate weight to Plaintiff's subjective complaints and in making his credibility determination.  Plaintiff further argues that the ALJ erred at step 5 by failing to obtain the testimony

of a vocational expert and instead applied the Medical Vocational Guidelines ("Grids") to direct a finding of not disabled despite Plaintiff's nonexertional impairment.

**A.      Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.**

Plaintiff argues that the ALJ failed to properly weigh the evidence in determining his RFC, as demonstrated by his failure to give appropriate weight to the opinions of his treating physicians and by failing to correctly weigh Plaintiff's credibility and consider his subjective allegations. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

In his opinion the ALJ noted that Dr. Luther R. Gohlke and Dr. Webb, both treating physicians, opined that Plaintiff was disabled. Tr. 19. He also noted that Dr. Gohlke indicated in a letter from July 2000 that Plaintiff was not able to go back to work and had elected to go to school. *Id.* He noted that Dr. Webb indicated his recommendation in December 2002 that Plaintiff not do

any lifting, bending, or stooping due to his previous back injury.  Tr. 19, 268.  The ALJ also noted

that Dr. Webb completed a questionnaire in August 2003, indicating that Plaintiff had lumbar back

pain with clinical findings including limited lumbar range of motion, tenderness, and muscle spasms,

subjective intermittent sensory loss, and muscle weakness in the right lower extremity.  *Id*.  Dr.

Webb opined that Plaintiff could only sit up to one hour in an 8-hour day, must change positions

every 30 minutes, cannot lift or carry more than five pounds occasionally, and could not stoop, bend,

kneel, or engage in other similar acitivies.  *Id*.  The ALJ also noted Dr. Webb's opinion that

Plaintiff was capable of tolerating only low stress jobs, was unable to work a full 8-hour day, and

would miss work more than three times per month due to his impairments.  *Id*.  Dr. Webb also

opined that Plaintiff had experienced these limitations since 1996.  Tr. 19.

    The ALJ noted that both Dr. Gohlke and Dr. Webb had long treating relationships with

Plaintiff.  However, the ALJ indicated that he was not giving controlling weight to their opinions

because such opinions were "entirely inconsistent with the medical records, including their own

treatment notes and findings."  Tr. 19.  The ALJ elaborated, noting that Dr. Golhkle's note implies

that Plaintiff chose to attend school rather than work.  *Id*.  The record demonstrates that Dr. Gohlke's

note provided "Nathan Barker, in my opinion, is not able to go back to work.  He has elected to go

back to school which will start 8/10/00."  Tr. 152.  The ALJ opined that "[t]he ability to complete

full-time college work entails the need to attend and sit through classes, the ability to concentrate

and study, and the ability to keep to a schedule of classes," which he found was inconsistent with

Plaintiff's claims of disability.  Tr. 19.  The ALJ noted that Dr. Golke's June 2002 note was written

when Plaintiff was required to complete community service, noted that the records do not indicate

an intervening event to increase Plaintiff's pain, and stated that "it appears he may have been

motivated to seek help so he could be assigned less strenuous community service."  Tr. 19-20.

The ALJ opined that Dr. Webb's note and the questionnaire he completed were contrary to the evidence at that time and also noted that the questionnaire was in boilerplate form and possibly prepared for submission at the hearing rather than for treatment purposes.  Tr. 20.

Plaintiff argues that the ALJ erred by failing to appropriately justify his failure to give appropriate weight to the opinions of his treating physicians and further erred by failing to discuss each of the factors set forth in 20 C.F.R. § 404.1527(d) before declining to give any weight to the treating specialist's opinion.

However, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'  These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)).  Insofar as Dr. Gohlke and Dr. Webb opined that Plaintiff was "disabled" or unable to work, the ALJ was not required to give these opinions any particular significance.  The ALJ did not err by failing to accord "controlling weight," or any special weight to Dr. Gohlke's opinion that Plaintiff should not work.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion.  20 C.F.R. § 404.1527(d).  The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist."  *Newton,* 209 F.3d at 456.  Thus, the ALJ is required to consider the six factors if he declines to give the opinion of a treating specialist any weight.  Pursuant to Soc. Sec. Ruling 96-2p(July 2, 1996)("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set

forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620.

As noted above, the ALJ is permitted to "discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d 456. SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR 96-2p. This ruling further explains:

> If any of the above factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight. It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

SSR 96-2p. The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

The ALJ ultimately found that Plaintiff retained the RFC to perform a range of light work, with the restriction that he can only occasionally perform positional changes and is limited to unskilled work. Tr. 25. The ALJ found that the limitation to perform positional changes only occasionally did not significantly affect Plaintiff's ability to perform work existing in significant numbers in the national economy.

The record indicates that Dr. Gohlke wrote a note for Plaintiff that he should not perform bending, stooping, or lifting because of his history of back problems. Tr. 139-40. Dr. Gohlke indicated in the accompanying progress note that as a result of Plaintiff's community service, he was

being required to lift cross-ties and mow grass.  Tr. 140.  He indicated that Plaintiff "can't mow yards, can't bend over, can't stoop over, [and] can't pick up stuff" because of his back.  *Id*.  Dr. Gohlke's progress note of August 26, 2002, notes that Plaintiff was lifting a lawn mower with a friend and felt a pulling sensation in his back.   *Id*.  He noted Plaintiff's report of tenderness, observed muscle spasm, and indicated that Plaintiff should use moist heat for his low back pain.  *Id*.

Dr. Golhke noted on March 17, 1999, that Plaintiff had undergone a psychiatric evaluation by Patricia McDougal, M.D., who opined that Plaintiff's diagnosis on Axis I was major depressive disorder, in partial remission, involving depressed mood, anhedonia, and concentration difficulties, as well as alcohol dependence.  Tr. 159.  On April 12, 1999, Dr. Gohlke noted that Plaintiff was "[f]eeling much better," with some occasional back pain but no significant sciatica.   *Id*.  He noted that Plaintiff was started on physical therapy.  *Id*.   On June 22, 1999, he noted that Plaintiff had not been dismissed, was still under care, and was continuing physical therapy.  Tr. 158.

Dr. Gohlke noted on June 23, 1999, that the physical therapist had called, asking to continue physical therapy for two weeks.  Tr. 157.  The progress note indicates that Plaintiff was up to lifting 35 pounds and doing well but may get up to 50 pounds with the continued therapy.   *Id*.  He noted on July 20, 1999, that Plaintiff continues to do well, was stable with minimal to no pain, and was able to drive a car and walk okay.   *Id*.  Dr. Gohlke noted that Plaintiff was not able to work yet and experienced pain "if he does excessive stooping over or bending."   *Id*.  On December 8, 1999, Dr. Gohkle noted that Plaintiff was having low back pain, nonradiating, which was kind of a dull ache.  Tr. 156.  He noted that Plaintiff was presently taking no medications and was enrolled in a trade school.  *Id*.

Dr. Gohlke noted on February 9, 2000, that Plaintiff "feels good" but experiences some low back pain if he drives over a long period of time or if there is a major weather change where the weather gets cold.  Tr. 155.  He noted Plaintiff's report of sleeping well, good appetite, and "doing

very well." *Id*. When Plaintiff was in jail in March 2000, Plaintiff apparently reported low back pain from sleeping on the hard bed. *Id*. After being released from jail, Plaintiff was treated for muscle spasms. Tr. 154. On June 30, 2000, Dr. Gohlke noted that Plaintiff was better. *Id*. Dr. Gohlke noted on July 17, 2000, that Plaintiff was doing a lot better, was walking two miles per day, was "kind of back to his routine" and was exercising more. Tr. 153. His impression was that Plaintiff had lower back pain and a resolving ruptured disk with some muscle spasms. *Id*.

Dr. Webb completed a lumbar spine questionnaire on August 19, 2003, noting the most recent exam of July 14, 2003. Tr. 406-12. Dr. Webb noted his diagnosis of lumbar back pain demonstrated by limited range of motion, tenderness, and muscle spasm of the lower back. *Id*. He also noted Plaintiff's subjective experiences of intermittent sensory loss in the lower back and muscle weakness of the lower extremity. Tr. 407. He noted that Plaintiff's symptoms included lower back pain and muscle spasm. *Id*. Dr. Webb described the pain as an ache, with occasional sharp pain, in the lumbar spine, occurring every day and precipitated by sitting, bending, or cold. Tr. 408. He opined that Plaintiff was able to sit up to one hour and stand/walk up to one hour during an 8-hour work day and that Plaintiff should get up and move around every 30 minutes and should not stand/walk continuously. Tr. 408-09. Dr. Webb opined that Plaintiff could occasionally lift or carry up to five pounds. Tr. 409. He indicated that Plaintiff's experience of pain would frequently interfere with attention and concentration and also noted Plaintiff's depression caused by chronic pain and inability to work. Tr. 410. Dr. Webb also indicated that Plaintiff could tolerate low levels of work stress but was unable to work a full day and unable to sit for any length of time. Tr. 410-11. He also indicated that Plaintiff would likely be absent from work more than three times per month and should avoid temperature extremes. Tr. 411. He also indicated that Plaintiff should not push, pull, kneel, bend, or stoop. *Id*.

Dr. Webb's progress notes indicate on December 11, 2002, that Plaintiff reported back pain and muscle spasm secondary to his previous injury and that Webb adjusted his medication. Tr. 269. Dr. Webb's next progress note indicated Plaintiff's follow-up visit on May 29, 2003, for his lumbar back pain. *Id*. Dr. Webb noted Plaintiff's report of his medication "working fairly well" and his indication of being "fairly comfortable in his back except when he does any bending." *Id*.

Dr. Marten Geitz, who examined Plaintiff on December 5, 1996, noted that he performed a partial examination because it was "obvious that patient is not maximum medical improvement." He noted that Plaintiff had right sciatica, with positive straight leg raising test and an MRI showing the diagnosis of herniated nucleous pulposus lumbar spine. Tr. 106. Plaintiff underwent surgery, continued to have persistent pain, and again underwent surgery. Tr. 113.

Dr. Quirico Torres, Plaintiff's neurological surgeon, noted that after the surgery Plaintiff remained stable, and Torres advised him to continue his activity and continue wearing a brace. Tr. 124. Dr. Torres noted that Plaintiff remained stable on March 8, 1999, and also indicated that Plaintiff occasionally had some pain on the lower back region. *Id.* Dr. Torres noted in April that Plaintiff was "feeling much better," with some back pain but no significant sciatica. Tr. 121. He noted in May that the mobility of Plaintiff's back was much improved, he had no significant back pain, and he was tolerating therapy very well. *Id.*

Dr. Torres noted on June 17, 1999, that Plaintiff was "feeling good" with no significant sciatica at this time" and also noted "much improved" mobility of the back. Tr. 115.

Plaintiff reported increased pain on August 21, 2000, after he had changed out a "u-joint" on his truck. Tr. 151. He fell from a peach tree and sought treatment for an injured wrist on April 23, 2001. Tr. 149. On June 29, 2001, he experienced leg cramps after mowing his grass. Tr. 148. On July 30, 2001, Plaintiff reported passing out after changing a flat tire. Tr. 147. Plaintiff

reported on August 26, 2002, that he experienced additional back pain after trying to lift a lawn mower with a friend.  Tr. 140.

Plaintiff argues that the ALJ erred in finding that Dr. Webb's opinion expressed in the questionnaire was unsupported by his own progress notes or other substantial evidence in the record. However, the record demonstrates Dr. Webb's observation that Plaintiff's medications worked fairly well in treating his muscle spasms and low back pain.  Tr. 238.  While Dr. Gohlke did indeed indicate that Plaintiff should "take it easy," the medical record demonstrates that Plaintiff engaged in activity and continued to experience exacerbations of pain and injuries after fixing his truck, falling out of a tree, mowing his grass, trying to lift a lawn mower, and changing a tire.

Although Dr. Webb indicated in 2002 that Plaintiff was extremely limited, Dr. Gohlke noted on May 8, 2002, that Plaintiff "seems to be doing good" and had done very well since surgery.  Tr. 141.  On August 20, 2001, he noted that Plaintiff stated that he "feels great."  Tr. 143.  In his opinion the ALJ noted that Dr. Webb was an examining and long-time treatment provider and specifically addressed the supportability of Dr. Webb's opinion as expressed in the questionnaire and compared it to the other evidence of record.

The regulations provide that:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(a).  The ALJ ultimately found that Plaintiff could perform light work with the restrictions that he can only occasionally perform positional changes and is limited to unskilled

work.  In making his RFC finding, the ALJ not only rejected the opinions of the treating physicians who indicated that Plaintiff was unable to work, he also essentially rejected the opinions of the treating physicians as to the limitations imposed by Plaintiff's impairments in terms of lifting; the ability to sit, stand, and walk; and various positional limitations.  The RFC finding does not reflect the substantial evidence in the record indicating that Plaintiff's pain is exacerbated by cold and that he is limited in his ability to bend, stoop, and lift.  Dr. Gohlke indicated this in his June 24, 2002, note and in his progress notes.  Tr. 139-40.  Plaintiff reported his problems with bending, sitting, twisting, stooping, and lifting.  Tr. 56.  The record is replete with references to Plaintiff's increased pain with cold or weather changes.  Tr. 141, 150, 155.  Moreover, although Plaintiff clearly experienced improvement after his second surgery to his back (at one point Dr. Gohkle noted that Plaintiff had achieved the ability to lift 35 pounds and might regain the ability to perform medium level work), he has also consistently reported the exacerbation of his back pain with certain activities and under certain environmental conditions, the inability to sit longer than about 30 minutes, being able to walk short distances, and being able to only drive for short distances and time periods.  Tr. 499-502.  While the ALJ noted that full-time college attendance was incompatible with the limitations noted by Dr. Webb,  Plaintiff's testimony and the record indicate that although Plaintiff did start attending technical college, he was unable to complete the program, withdrew from various classes, and eventually dropped out.  Tr. 85-96.  While the ALJ noted that Plaintiff engaged in activities which conflicted with the functional limitations noted by Dr. Webb, the record demonstrates that these attempts at increased levels of activity exacerbated Plaintiff's pain and caused him injury.  Moreover, the record reflects Plaintiff's testimony and Dr. Webb's notation that Plaintiff has good and bad days and that his pain is exacerbated by temperature and environmental conditions, as well as activity.

Having considered the evidence of record as a whole, and having carefully considered the consistency among the medical evidence, Plaintiff's testimony, and Plaintiff's subjective allegations, I find that the RFC assessment is not supported by substantial evidence in the record. Even though the ALJ was not required to give special weight to the opinions of Drs. Gohlke and Webb as to disability, the ALJ's failure to include additional limitations in Plaintiff's RFC with respect to Plaintiff's ability to lift, sit, stand, walk, bend, stoop, twist, or drive, or his ability to deal with the cold or with weather change is not supported by substantial evidence in the record.

Plaintiff further argues that the ALJ also failed to give appropriate weight to the opinion of Dr. G. Alan Trimble, a psychological consultative examiner, who indicated that Plaintiff had a Global Assessment of Functioning ("GAF")[1] score of 50[2] on Axis V[3] in making his RFC determination and substituted his own judgment as a layman in assessing the limitations imposed by Plaintiff's mental impairment. Plaintiff argues that the failure of the ALJ to assess no greater than mild limitations in any functional area demonstrates that the ALJ inappropriately failed to consider the GAF score assigned by Dr. Trimble and incorporate such limitations in his RFC assessment and in performing the special psychiatric review technique.

---

[1]    The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32. This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id.*

[2]    A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[3]    The axial system of evaluation is used to facilitate comprehensive and systematic evaluation with attention to the various mental disorders; general medical conditions; psychosocial and environmental problems; and level of functioning. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 27. An Axis I diagnosis is used to report all clinical disorders except for personality disorders and mental retardation, which are reported on Axis II. *Id.* at 27-28.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R.§§ 404.1520a and 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R.§§ 404.1520a and 416.920a. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "b" criteria. A five-point scale is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 404.1520a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of limitation in each of the functional areas described. 20 C.F.R. §404.1520a(e)(2). The Psychiatric Review Technique form ("PRTF") represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00-12.09. 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct a residual functional capacity assessment. *Boyd*, 239 F.3d at 705.

The record demonstrates that Plaintiff underwent a consultative psychiatric examination on September 11, 2002. Tr. 206-10. Dr. Trimble, the psychiatric consultative examiner, noted

Plaintiff's history of a suicide attempt in 1997 and his current treatment with his primary care physician, Dr. Gohlke.  Tr. 207.  He noted Plaintiff's report of living alone, handling his finances, cooking his own meals, shopping, driving, watching TV, and fishing once or twice a month (although not lately).  Tr. 209.  Dr. Trimble opined that Plaintiff's ability to perform chores, cook, and shop was impaired due to lack of motivation and chronic back pain.  *Id*.  He noted that Plaintiff reported being able to get along well and communicate well with people in terms of social functioning, the ability to care for his own personal needs, and adequate concentration, persistence, or pace.  *Id*.  Dr. Trimble's diagnosis on Axis I was major depressive disorder, chronic, and he opined that Plaintiff had a GAF score of 50.  Tr. 210.  He also opined that without treatment, Plaintiff's prognosis was poor and was guarded with the current treatment.  *Id*.

The ALJ found under the part "b" criteria that Plaintiff's mental impairments mildly to moderately restricted his activities of daily living; created no difficulties in his ability to maintain social functioning; created no more than mild to moderate difficulties in maintaining concentration, persistence, or pace; and had resulted in at least one episode of decompensation.  Tr. 22.  This finding is entirely consistent with Dr. Trimble's description of the limitations imposed by Plaintiff's impairments.  *See* Tr. 209.

Plaintiff argues that the ALJ essentially rejected the GAF score assigned by Dr. Trimble, which indicates serious symptoms or serious difficulty in social, occupational, or school functioning. The ALJ did not find that this rating was inconsistent with Dr. Trimble's findings upon examination. It is important to note that the DSM-IV describes the GAF as a useful tool for "planning treatment and measuring its impact, and in predicting outcome."  In finding that the GAF score was unsupported by the evidence, the ALJ did not make a prejudicial error, nor did he reject Dr. Trimble's opinion, given that the ALJ's part "b" findings are entirely consistent with the other portions of Dr. Trimble's opinion, where he noted Plaintiff's activities of daily living, described his

social functioning, indicated that his concentration was adequate, and noted Plaintiff's previous episode of decompensation. The ALJ did not inappropriately substitute his own lay opinion for that of Dr. Trimble in making his finding as to the limitations imposed by Plaintiff's mental impairment.

Moreover, Dr. Trimble's GAF score does not represent a medical opinion as to specific limitations imposed by Plaintiff's mental impairment. Rather, it represents a tool he used in the course of his examination, diagnosis, and treatment. In any case, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). I find that the ALJ did not improperly fail to weigh and consider the opinion of Dr. Trimble in determining the limitations imposed by Plaintiff's mental impairment.

Plaintiff alleges that the ALJ erred in making his credibility determination in several respects. Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective complaints as required by Soc. Sec. Ruling 96-7p (July 2, 1996)("SSR 96-7p"), Soc. Sec. Ruling 96-8p (July 2, 1996)("SSR 96-8p"), and 20 C.F.R. § 404.1529. Plaintiff notes that the ALJ found that Plaintiff was not credible, in part, because of his varying reports of pain. While these reports clearly varied, the record consistently demonstrates that Plaintiff experienced periods of exacerbation (good days and bad days), that his level of pain was affected by activity and environmental factors, and that his condition changed over time, with periods of improvement as well as times where his condition worsened.

Of course, pain may be disabling. A claimant's testimony of pain is insufficient to establish disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). The ALJ's assessment of the disabling nature of the claimant's pain is due considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). For pain to rise to the level of disabling, that pain must be "constant, unremitting,

-17-

and wholly unresponsive to therapeutic treatment." *Id.*; *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Subjective complaints of pain must be corroborated by objective medical evidence. *Chambliss*, 269 F.3d at 522 (*citing Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)). Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Chambliss,* 269 F.3d at 522 (*citing Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)).

Pain, even if not disabling, "may be another nonexertional limitation on the range of jobs open to claimants." *Lawler v. Heckler*, 761 F.2d 195, 198 n.3 (5th Cir. 1985) (*citing Carter v. Heckler*, 712 F.2d 137, 142 (5th Cir. 1983)). However, "[t]here must be clinical or laboratory diagnostic techniques which show the existence of a medical impairment which could reasonably be expected to produce the pain alleged." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1384-85 (5th Cir. 1988)). Pain constitutes a disabling condition under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders*, 914 F.2d at 618-19 (internal citations omitted).

In this case the ALJ noted that Plaintiff's back and leg pain improved after his first surgery, that Plaintiff was noted to be functioning fairly well, and that at one point he could lift 35-50 pounds. The record clearly demonstrates that Plaintiff experienced periods of improvement. The ALJ noted Plaintiff's various activities and his varying reports of doing well. However, Plaintiff also consistently reported that he continued to experience low back pain and muscle spasms, worsened by cold and activity. While the ALJ noted that Plaintiff began to attend college, which required him to sit long enough to drive there, and reasoned that the ability to "complete full-time college work entails" certain abilities which were contrary to Plaintiff's subjective allegations regarding the limitations imposed by Plaintiff's impairments, the record also contains evidence demonstrating Plaintiff's inability to actually and successfully complete his college work.

-18-

I have already found that the ALJ's RFC determination is not supported by substantial evidence because the RFC finding does not reflect all of the limitations imposed by Plaintiff's impairments.   The ALJ is the factfinder, and his evaluation of the credibility of subjective complaints is, therefore, entitled to judicial deference if supported by substantial evidence.  *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). However, the degree of consistency between Plaintiff's subjective allegations of pain and the opinions of the examining and treating medical sources was not appropriately considered in the RFC determination.   As such, upon remand, the ALJ should consider such consistency in making his credibility determination and in evaluating Plaintiff's subjective complaints as to the pain he experiences and as to the limitations imposed by his impairments.

Plaintiff argues that the ALJ inappropriately applied the Grids to direct a finding of disabled because of his nonexertional limitations. As Plaintiff correctly notes, where a claimant cannot perform the full range of a specific level of work activity or has significant nonexertional impairments, the ALJ may not mechanically apply the Grids, although they may be used as a framework.  Application of the Grids is appropriate "when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity."  *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).  Upon further consideration of the limitations imposed by Plaintiff's impairments, and should the ALJ reach the appropriate step in the sequential evaluation process, the ALJ should determine whether it is necessary to obtain vocational testimony or whether application of the Grids is appropriate.

I find that the ALJ erred in making his RFC assessment and that such assessment is not supported by substantial evidence in the record.  I further find that the ALJ did not err in rejecting the opinions of Drs. Gohlke and Webb as to Plaintiff's disability.  I further find that the ALJ did not

err by rejecting Dr. Trimble's GAF score insofar as the part "b" finding is consistent with Dr. Trimble's opinions and findings as a whole. However, upon remand, the ALJ should further consider the opinions of the treating and examining medical providers, as well as Plaintiff's testimony and subjective allegations, in determining the limitations imposed by Plaintiff's impairments, including his mental impairments. The ALJ should also determine whether to obtain vocational testimony, if appropriate.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge reverse the Commissioner's decision and remand this case for further proceedings in accordance with this recommendation.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 13th day of February, 2007.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**